OPINION
KRAMER, J.
Statement of Facts
This action arises from a collision between a taxicab of the defendant company and an automobile driven by one Robert Montgomery. The plaintiff, Mary Sawyer, was a passenger in the taxicab, Her petition alleges, — and her right of recovery depends upon this allegation, — that the driver of the taxicab was guilty of negligence at the time and place in question in the operation of his cab, as a result of which she was. injured.
The taxicab was being driven south on East 18th Street and entered Euclid Avenue with the green light. Montgomery, traveling west on Euclid Avenue at the time the' cab entered the intersection, was some greater or less distance east of the safety zone existing at the intersection on the south side of the street and extending approximately 100 feet easterly from the west cross-walk. Montgomery’s car unlawfully proceeded through the safety zone against the red light and collided with the rear end of the taxicab either on the westbound track or south thereof. The driver of the taxicab saw Montgomery’s car some undefined distance east of the safety zone.
The jury returned a verdict for the plaintiff in the sum of $5,000.00.
The motion of the defendant, the Yellow Cab Company, for a new trial and for a judgment notwithstanding the verdict is now before the Court for its consideration.
This abbreviated statement of *493 facts is sufficient for the purpose of this motion.
Haw
The law governing this situation is laid down in Morris v Bloomgren, reported, in 127 Oh St 147. That case distinctly and positively holds that the law confers upon a vehicle having the right of way an absolute right, qualifled only by the provision that it must be proceeding in a lawful manner. The court says that the driver of such vehicle is not charged with the obligations of duty arising under the common law, namely that of using ordinary care (in this case the highest degree of care). The Court says (page 152):
“The He)die and Candy Company cases, supra, construed those sections (§§6310-28 and 6310-28a GO as not conferring an unqualified right of way upon the driver of a vehicle approaching from the right; but, ignoring the preference thereby given him, they held, that such driver was charged with the obligations of duty arising under the common law, that of using ordinary care. The minority of this court were of the opinion that such an interpretation of the quoted sections was unwarranted judicial legislation. In their dissent in the Candy Company case, supra, at p. 368, they stated that the rule adopted by the majority relegates the driver approaching from the right ‘to the same duties as would arise if. no statute existed; it deprives him of the advantage of the statute giving him the uninterrupted right of way; it permits the plaintiff to violate the law with impunity, and places both drivers on an equal plane by requiring ordinary care where their paths converge; it emasculates the statute, and requires the defendant, in such situation, to exercise ordinary care under the rules of the common law, although he may be driving on the main highway in a lawful manner.’ * ~ * By a process of judicial construction those cases have nullified the statute, by withholding from the driver possessing the favored right of way the privilege of proceeding without interruption in the direction in which he was moving, and have confined both drivers of converging vehicles to the same care in approaching the intersection that was required before the statute was enacted— namely, that degree of care exacted under the common law. What boots it to the lawful driver who is given an unequivocal right of way, if that right be denied him by judicial interpretation?
“ * * * (page 154). However, so long as such driver proceeds lawfully, at a speed that is reasonable and proper, and without violation of, but in obedience to, law or or - dinance,-he is entitled to maintain his right of way, his statutory right to proceed uninterruptedly, while approaching and crossing the intersection.
“ * * * (page 156). The connotation running through both cases (Heidei and Candy cases supra) is that in approaching the intersection both vehicles are on an equal plane, and both drivers governed by the same common law rules, utterly ignoring the law that gives the vehicle having the preference the right to ‘proceed uninterruptedly’ and wholly disregarding the requirement that the other or servient vehicle must yield thereto. Since those cases deprive the favored vehicle of its unqualified privilege to proceed, if proceeding in a lawful manner, and since they relegate both vehicles to like care at the intersection approach, they are both disapproved.”
*494 The only conditions under which the driver of such vehicle can be held guilty of negligence is stated on page 158-159:
“We have already stated that the driver of a lawfully driven vehicle approaching from the right had the right to assume that the operator of the vehicle approaching from the left would obey the law and yield him the right of Way. However, if such operator disobeyed the law, and failed or refused to yield the right of way to the vehicle that possessed it, a situation might arise whereby an obligation of care would arise upon the part of the driver having the right of way. If he should discover, just as he was approaching or entering the intersection, that the driver of the vehicle on his left was violating the law, and was not yielding to him the right of way, it then became the duty of the driver lawfully having the right of way not to wantonly injure the other, but to use ordinary care to avoid injuring him, after discovering and appreciating the dangerous peril in which the negligent driver had placed himself.” .
Applied to this case it would be the duty of the driver lawfully having the right of way, that is the taxicab driver, to use the highest degree of care to avoid the collision only after discovering and appreciating the dangerous situation which arose by reason of the negligence of Montgomery in the operation of his car.
When the taxicab entered the intersection, Montgomery’s car was neither in the intersection, nor was it immediately entering it. It would not be in a position to be seen by the taxi driver unless he looked to the left for approaching cars. If he did so look he would have seen the Montgomery car approaching but such car would create no peril unless it both failed to stop, and also failed to pass to the right of the safety zone. The taxi driver would have the right to presume that the Montgomery car would obey the law in both these respects and could not come within the exception of Morris v Bloomgren unless he could be charged with knowledge that Montgomery was not yielding him the right of way and was coming through the safety zone.
Counsel for plaintiff earnestly contends that the testimony of Mary Sawyer is sufficient upon which to base a finding that a condition of obvious peril existed at this intersection when the taxicab entered Euclid Avenue. This contention is based upon her statement that
“I saw this car coming down Euclid Avenue, about fifteen feet away when our cab pulled out.”
Manifestly this could not be true, because if it were there would have been no collision.
Construing the testimony most favorably to the plaintiff the collision took place on the westbound track of the railway, Montgomery’s car striking the rear end of the taxicab. If the Montgomery car were fifteen feet away from the taxicab when the cab entered Euclid Avenue it would have been through the intersection before the cab reached the place where the collision took place. It seems clear, however, that the witness did not intend to say that the Montgomery car was fifteen feet away when the cab pulled out into Euclid Avenue, for the next question is,
“Q. Where was the cab when you saw that?
*495 “A. The cab was pulling out on the westbound car track.
“Q. The cab was pulling out on the westbound car tracks when you first saw the Montgomery car?
“A. Yes.
“Q. It was then how far away?
“A. About fifteen feet, I imagine.”
Again it is clear that if the Montgomery car were fifteen feet away when the taxicab was pulling onto the westbound tracks, that it could not have been eithej: in the intersection or immediately entering the same when the taxicab came onto Euclid Avenue.
Miss Sawyer testifies to the same effect in cross examination and the only conclusion which it seems can reasonably be drawn from her testimony is that she saw the Montgomery car but a fraction of a second before the collision occurred.
It appears to the Court that it is quite impossible under these facts to find that there was such a situation of obvious peril existing at the time the taxicab entered and proceeded across the intersection to say that his driving into the intersection was “wanton” and that he was guilty of negligence contributing to this collision.
In determining whether or not this is the lawr this Court may not consider decisions from other states, for the Supreme Court says in this same case (page 151):
“And at the outset it may be stated that counsel have been unable to discover any other state which has traffic regulations or definitions of ‘right of way’ such as we have in Ohio. We are therefore unable to place reliance upon the cited cases recorded elsewhere dealing with statutes essentially different from our own.”
Morris v Bloomgren appears to stand unreversed or unmodified. Martinovich v Jones, 135 Oh St, 137, cited by counsel for plaintiff adopts a different rule where a pedestrian was injured at an intersection; but distinguishes Morris v Bloomgren (page 143). Pitt v Nichols, 138 Oh St 555, Ohio Bar November 10, 1941, cites Morris v Bloomgren to the effect that right of way “is absolute” (page 562).
The Court is unable to follow the reasoning of plaintiff that the case at bar is governed by Martinovich v Jones, rather than Morris v Bloomgren. Liability herein depends entirely upon whether the taxicab driver was negligent. Whether or not he was negligent depends entirely upon his conduct in relation to that of the driver of the other vehicle. Morris v Bloomgren determines the rights of vehicles at street intersections. Martinovich v Jones determines the relative rights of a vehicle and a pedestrian at street intersections.
Upon the trial of this action the Court considered that the taxi driver by virtue of the green light had the right to proceed and that he had a right to rely upon the driver upon the intersecting highway to obey the signal and stop before entering the intersection; that, however, the taxi driver was still bound by the rule of the common law to exercise the highest degree of care in entering and crossing the intersection. It was upon this theory of the law that the Court doubtfully overruled de*« fendant’s motion to withdraw the evidence from the jury and direct a verdict for the defendant, and it was upon this theory that the Court charged the jury.
If this were the law the Court would still consider that under the *496 circumstances existing at the time and place where this collision occurred there was sufficient question of liability to warrant his submission of the case to the jury.
Conclusion
The Court is reluctant, and it considers properly so, to set aside a jury verdict and has studiously endeavored to find law to support it. It is convinced that it was • in error in its construction of the law at the trial, and that under the law, as it considers it to be inescapably established by Morris v Bloomgren, it was in error in not granting the defendant’s motion.
It is therefore the ruling of the Court that the motion of the defendant for a judgment notwithstanding the verdict should be granted and the judgment is hereby entered for the defendant. Exceptions.